**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF WYOMING**

Civil Action No.   25-cv-237


LIBERTY MUTUAL SURETY, and OHIO CASUALTY INSURANCE COMPANY,

                Plaintiff,

v.

RESOURCE CONSTRUCTION, LLC,
DIXON RESOURCES, INC., and
RICHARD FRANK DIXON, an individual,

                Defendants.

---

## COMPLAINT

---

Plaintiffs, Liberty Mutual Surety ( "Liberty") and Ohio Casualty Insurance Company ("OCIC") (collectively, the "Plaintiffs") by and through its undersigned counsel, The Hustead Law Firm, *A Professional Corporation*, submits its Complaint against the Defendants, Resource Construction, LLC ("Resource"), Dixon Resources, Inc. ("Dixon Resources"), and Richard F. Dixon ("Mr. Dixon") (collectively, the "Defendants" or "Indemnitors") jointly and severally.

### I.  PARTIES

1.      Liberty Mutual Surety is a corporation organized under the laws of the State of Massachusetts, with its principal place of business located at 175 Berkeley Street, Boston, MA 02116.  Liberty Mutual Surety is a business unit of the Liberty Mutual Group that provides surety services to the Liberty Mutual Group's member companies.

2.      OCIC is a corporation organized under the laws of the State of New Hampshire and member of Liberty Mutual Group, with its principal place of business located at 175 Berkeley Street, Boston, MA 02116.

3.      Resource Construction, LLC is a Wyoming limited liability company with its principal place of business located at 3864 K2 Ranch Road, Cheyenne, Wyoming 82007.

4.      Dixon Resources, Inc. is a Wyoming corporation with its principal place of business located at 3344 Ridge Road, Cheyenne, Wyoming 82001.

5.      Upon information and belief after a search of publicly available information, Richard F. Dixon is domiciled at 12309 White Eagle Road, Cheyenne, Wyoming 82009 but may also reside at 1412 McAllister Lane, Cheyenne, Wyoming 82009.

## II.      JURISDICTION AND VENUE

6.      Plaintiffs hereby incorporate by reference all the allegations contained above as set forth herein.

7.      This Court has personal jurisdiction over the Defendants because Resource transacted business in Cheyenne, Wyoming, including but not limited to, entering into agreements relating to the performance of concrete and trenching work for the installation of new security fencing, including demolition of previous gate area and temporary construction fencing at the Governor's Residence in Cheyenne, Wyoming (the "Project").

8.      As partial consideration for OCIC (a Liberty Mutual Group member) executing payment and performance bonds, the Defendants executed a general indemnity agreement in favor of Liberty dated July 3, 2024 (the "GIA").  A copy of the GIA is attached as **Exhibit 1** and incorporated by reference herein.  Pursuant to the GIA, Defendants promised to post collateral with Plaintiffs as set forth in the contract and to reimburse Plaintiffs for, among other things, any

losses, expenses, payments, attorneys' fees, costs incurred by Plaintiffs relating to the bonds.  As such, the Defendants purposefully availed themselves of the benefits and privileges of conducting business in Wyoming.

9.      This Court has original subject matter jurisdiction under 28 U.S.C. § 1332(a) because complete diversity exists between the parties and the amount in controversy in this matter exceeds seventy-five thousand dollars ($75,000), exclusive of interests and costs (Liberty seeks reimbursement of losses in the amount of at least $106,557.88).

10.     As set forth above, Liberty is a citizen of Maryland, where Liberty is incorporated and where Liberty's principal place of business is located.

11.     As set forth above, OCIC is a citizen of Massachusetts, where OCIC's principal place of business is located.

12.     As set forth above, Resource is a citizen of Wyoming, where Resource is incorporated.

13.     As set forth above, Dixon Resources is a citizen of Wyoming, where Dixon Resources is incorporated.

14.     Upon information and belief, Mr. Dixon is domiciled in Wyoming, and therefore, is a citizen of Wyoming.

15.     Venue is proper under 28 U.S.C. § 1319(b)(2) because a substantial part of the events or omissions giving rise to Liberty's claim occurred in or around Cheyenne, Wyoming.

### III.     GENERAL ALLEGATIONS

16.     Plaintiffs hereby incorporate by reference all the allegations contained above as though fully set forth herein.

**A.**    <u>**The Bonds**</u>

      17.     On or about October 17, 2023, Resource entered into an agreement (the "Contract") with the State of Wyoming, Department of Administration and Information (the "State") to perform concrete and trenching work for the installation of new security fencing, including demolition of the previous gate area and temporary construction of fencing at the Governor's Residence in Cheyenne Wyoming (the "Project").

      18.     On or about December 5, 2023, OCIC executed performance and payment bond no. 18L006144 (the "Bond") on behalf of Resource and in favor of the State in the penal sum of $989,742.00. A copy of the Bond is attached as <u>**Exhibit 2**</u> and incorporated herein by reference.

      19.     Pursuant to the terms of the Bond, and prevailing law, OCIC guaranteed that if Resource failed to perform under the Contract, the underlying bonded obligation would become due, and OCIC would pay the debt, up to the penal sum of the Bond.

      20.     Mr. Dixon owns and controls Resource. Accordingly, Mr. Dixon derives substantial economic benefit from the operations of Resource.

**B.**    <u>**The Indemnity Agreement**</u>

      21.     As partial consideration for OCIC executing the Bond, on or about July 3, 2024, the Defendants executed the GIA in favor of Liberty. *See* **Ex. 1**.

      22.     Pursuant to the GIA, the Defendants are jointly and severally obligated to, *inter alia*, indemnify and reimburse any member of the Liberty Mutual Group for losses incurred by any member of the Liberty Mutual Group, including Liberty and/or OCIC, relating to the Bond:

      4. **INDEMNITY**: Indemnitors shall exonerate, hold harmless, indemnify, and keep Surety indemnified from all liability for Loss. Indemnitors shall pay Surety for Loss promptly upon demand. If

Surety makes any Loss payment, Indemnitors agree that in any accounting between Surety and Principals, between Surety and Indemnitors, or either or both of them, Surety is entitled to recover from Indemnitors all disbursements made by it in good faith under the belief that it is or was or might be liable for the sums and amounts disbursed or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by Surety shall be prima facie evidence of the fact and amount of liability to Surety.

23.    The GIA defines "Surety" as "any member of the Liberty Mutual Group."

24.    The GIA defines "Loss" as:

"any loss, fees, costs and expenses, including pre- and post-judgment interest at the maximum rate permitted by law, court costs, counsel fees, accounting, engineering and outside consulting fees, which Surety may sustain or incur or otherwise determine to pay in its sole and absolute discretion, by reason of: (1) a request for a Bond; (b) execution or procurement of a Bond, including any cost incurred by surety in fulfilling its obligations under any Bond; (c) the failure of Indemnitors to comply with any covenants or conditions of this Agreement or Other Agreement; or (d) in enforcing any of the covenants and conditions of this Agreement or Other Agreements.

25.    In sum, pursuant to the GIA, the Defendants agreed, among other things, to indemnify and hold Plaintiffs harmless from any and all liability for losses, costs, damages, attorneys' fees, and expenses of whatever kind that Plaintiffs may sustain or incur by reason of having executed any bonds for or at the request of the Defendants.

26.    The Defendants also promised to place Plaintiffs in funds sufficient to cover any and all actual and potential liability that Plaintiffs might incur as a result of claims on any bonds:

5. **COLLATERAL**: Upon an Event of Default or determination by Surety that a potential Loss exists, Surety may demand that Indemnitors deposit a sum of money equal to an amount determined by Surety, or collateral security of a type and value satisfactory to Surety, to cover the Loss, whether or not Surety has: (1) established or increased any reserve; (B) made any Loss payment; or (c)

5

received any notice of any claims therefor. At Surety's sole option, this collateral may be in addition to and not in lieu of any other collateral and Surety may make multiple demands for collateral. Unless the Indemnitors and Surety agree otherwise in writing, Surety shall have the right to use any collateral or any part thereof in payment or settlement of any liabilities for which Indemnitors would be obliged to indemnify Surety and Surety shall have no obligation to invest or to provide a return on any collateral provided.

27.    The GIA also provides:

6. **ASSIGNMENT**: Indemnitors hereby assign, transfer, pledge and convey to Surety as collateral security for the full performance of this Agreement, Other Agreements, and the payment of any other indebtedness or liability to Surety, whether incurred in the past or the future, all right, title and interest in and growing out of the following and the proceeds thereof:
(a) All bonded contracts, bonded obligations, and Bonds, or growing in any manner out of such contracts, bonded obligations, and Bonds;
(b) All subcontracts let or to be let in connection with any bonded contract, including any related surety bonds or other payment security;
(c) All machinery, supplies, equipment, plant, tools and materials in which Indemnitors and/or Principals have an interest which are now or in the future may be on the site of any bonded contract or elsewhere, including materials purchased for or chargeable to any bonded contract, materials in the process of construction, in storage, or in transportation to any and all sites;
(d) All actions, causes of action, claims and demands whatsoever in connection with or on account of any bonded contract or obligation;
(e) All retained percentages and funds due or which may become due on any bonded contracts and all other contracts whether bonded or not in which the Indemnitors have an interest;
(f) All accounts and accounts receivable of the Principals, or any on of them;
(g) All deposit accounts;
(h) All chattel paper, documents, instruments, inventory, and investment property as those terms are defined by the Uniform Commercial Code as adopted in the relevant state;
(i) Tax refunds, claims for tax refunds, general intangibles;
(j) All equity interests (including, without limitation, all shares and membership, limited partnership, general partnership, limited liability company interests, and any interest and rights in any joint venture, consortium, or teaming agreement), to the extent the Surety

determines, in its sole discretion, is required for fulfillment of its obligations under Bonds;

(k) Licenses, patents, copyrights and trade secrets, or a license (without cost to Surety) for the use of any of these, to the extent Surety determines, in its sole discretion, is required for fulfillment of its obligations under Bonds;

(l) All warehouse receipts, bills of lading;

(m) The proceeds of any insurance policy affording coverage for all or part of any Bond or bonded obligation;

(n) All real property and real property interest, including but not limited to personal residence, commercial property, raw land or any other real property, whether owned fully or partially, by any Indemnitor.

28.    By virtue of the definitions and representations in the referenced GIA, the Defendants are, *inter alia*, obligated to post collateral with Plaintiffs, and are jointly and severally liable to Plaintiffs as set forth herein.  Defendants have these obligations at common law as well.

## C.    <u>The Claims</u>

29.    On or around April 4, 2025, Apex Energy Services, LLC ("Apex"), one of Resource's subcontractors for the Project, submitted a claim on the Bond.  Apex alleged that it provided construction services to Resource at the Project for which Resource had failed to pay Apex at least $246,577.88.

30.    As a result of the Apex's claim and accruing costs, Plaintiffs have incurred significant losses under the Bond, for which Defendants are jointly and severally liable, and now seek reimbursement for those losses.

## D.    <u>The Apex Settlement</u>

31.    On or around July 17, 2025, OCIC and Apex executed an Affidavit, Release, and Assignment Agreement (the "Settlement Agreement") for the full release and assignment of Apex's claims.

32.     Pursuant to the Settlement Agreement, "[i]n consideration of the payment of two hundred and six thousand, five hundred and seventy-seven dollars and eighty-eight cents ($206,577.88) by The Ohio Casualty Insurance Company, Apex Energy Services LLC hereby release[d] and forever discharge[d] the Surety and its successors and assigns from any and all cause of action, claims, and demands of any kind or nature whatsoever, arising out of, in connection with, or relating to the furnishing of labor, materials or equipment on bond 18L006144 in connection with the [Contract]."

33.     Additionally, the Settlement Agreement provides that Apex "assigns, transfers, and sets over to The Ohio Casualty Insurance Company its above-mentioned claim(s) or cause(s) of action, against Resource Construction, LLC together with all of its rights, title, and interest in and to said claim(s) or cause(s) of action and Apex Energy Services LLC appoints The Ohio Casualty Insurance Company its true, lawful and irrevocable attorney to demand receipt for, and enforce payment of, the said claim, and at its own expense to sue for the said sum so assigned, either in the name of Apex Energy Services, LLC, or in its own name."

E.     **Liberty's Demands for Indemnity and Collateral**

34.     On or about August 4, 2025, formal notice and demand was made on behalf of Plaintiffs to the Defendants regarding their joint and several duties to defend and indemnity Plaintiffs from and against all losses related to claims arising out of the Defendants' failure to fulfill their bonded obligations, including but not limited to, bond payments, costs, and attorneys' fees.  A copy of the August 4, 2025 indemnity demand is attached as **Exhibit 3** and incorporated by reference herein.

35.     The Defendants have not responded to Plaintiffs' indemnity demand.

**F.**    **The Irrevocable Letter of Credit**

36.    On or around December 4, 2023, to partially collateralize Plaintiffs for losses under the Bond, Resource executed an Irrevocable Standby Letter of Credit No. 10140 (the "ILOC") with FirsTier Bank ("FirsTier"), in the original amount of $100,000.00.  The ILOC named Liberty as beneficiary and was automatically extended and renewed as of December 4, 2024.

37.    On or around July 11, 2025, pursuant to Plaintiffs' rights under the GIA, formal notice and demand was made on behalf of Liberty to FirsTier, requesting immediate tender in the amount of $100,000.00 to Liberty pursuant to the ILOC.  On or around September 4, 2025, Liberty drew on the ILOC and received $100,000.00.

38.    Accordingly, Plaintiffs' losses total at least $106,557.88 plus interest and attorneys' fees and costs.

**FIRST CLAIM FOR RELIEF**
**(Breach of Express Contract against All Defendants)**

39.    Plaintiffs hereby incorporate by reference all the allegations contained above as though fully set forth herein.

40.    The Defendants entered into a valid and enforceable contract, the GIA, with Liberty, whereby the Defendants agreed to defend, indemnify, collateralize, and reimburse the Defendants for any liability, and losses relating to the Bond.

41.    Sufficient consideration supports the GIA.

42.    Plaintiffs substantially performed their obligations, if any, under the GIA, including but not limited to investigating and paying proper claims under the Bond.

43.    The Defendants failed to meet their obligations under the GIA, which constitutes a material breach.

44.    The Defendants' breach of the GIA has damaged Plaintiffs, and the Defendants are jointly and severally liable to Plaintiffs for all losses and expense incurred by Plaintiffs as a result of the issuance of the Bond, including, but not limited to, bonded payments, attorneys' fees, consultant fees, expenses, and costs, all as provided by the terms of the GIA.

### SECOND CLAIM FOR RELIEF
### (Common Law Indemnification against Resource)

45.    Plaintiffs hereby incorporate by reference all the allegations contained above as though fully set forth herein.

46.    Resource, as the principal under the Bond, is required to indemnify and hold Plaintiffs harmless from and against any and all liabilities, losses and expenses of any kind of nature, including, but not limited to, interest, court costs, expenses and attorney and consultant fees, imposed upon, sustained or incurred by Plaintiffs on account of the execution of the Bond.

47.    Plaintiffs have made demand upon Resource to be indemnified and placed in funds for all losses sustained or to be sustained as a result of the execution of the Bond.

48.    Resource has failed to meet its obligations to Plaintiffs under Wyoming law.

49.    Resource's failure to meet its obligations to Plaintiffs under Wyoming law has damaged Plaintiffs, and Plaintiffs are entitled to damages.

### THIRD CLAIM FOR RELIEF
### (Unjust Enrichment against All Defendants)

50.    Plaintiffs hereby incorporate by reference all the allegations contained above as though fully set forth herein.

51.    OCIC conferred a benefit on the Defendants by extending surety credit and/or executing the Bond on behalf of Resource.

52.     The Defendants accepted and appreciated that benefit by profiting from Resource's operations, which would not have been possible without the issuance of OCIC's surety credit and/or the Bond.

53.     The Defendants agreed to defend, indemnify, and post collateral with Plaintiffs in exchange for and pursuant to the terms of the GIA.

54.     By failing and refusing to do so, the Defendants have been and will continue to be unjustly enriched by keeping funds or other collateral to which Plaintiffs are entitled pursuant to the GIA and/or common law.

55.     It would be inequitable for the Defendants to retain the benefit of Plaintiffs' surety credit and/or the Bond without complying with their obligations under the GIA and/or common law to reimburse Plaintiffs for the loss.

56.     Under these circumstances and given the surety relationship between Plaintiffs and the Defendants, general considerations of right and justice dictate that Plaintiffs be granted the right to have the Defendants' assets applied to their obligation to post collateral with Plaintiffs.

## IV.     CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiffs request judgment against the Defendants as follows and for such further relief as the Court deems proper:

•     For all losses, expenses, costs and attorneys' fees, plus pre- and post-judgment interest at the maximum rate allowed by law, incurred by Plaintiffs as a result of the Defendants' breach of the GIA;

•     For the Defendants to indemnify and hold Plaintiffs harmless from and against any and all liabilities, losses, and expenses of any kind of nature, including, but not limited to, interest,

court costs, expenses and attorneys' fees, imposed upon, sustained or incurred by Plaintiffs on account of OCIC's execution of the Bond;

- Due to the Defendants' unjust enrichment, Plaintiffs request an equitable lien (including attorneys' fees, costs, and expenses) to be placed on any real or personal property owned in whole or in party by the Defendants including but not limited to the property located at 3864 K2 Ranch Road, Cheyenne, Wyoming 82007.

- For such further relief as the Court deems just and proper.

Respectfully submitted this 9th day of October, 2025.


The Hustead Law Firm
    *A Professional Corporation*

*The Original Signature is on File at The Hustead Law Firm, A Professional Corporation*


/s/ Patrick Q. Hustead
Patrick Q. Hustead, Esq.
Connor L. Cantrell, Esq.
The Hustead Law Firm, *A Professional Corporation*
4643 S. Ulster Street, Suite 1250
Denver, CO 80237
Ph. (303) 721-5000
pqh@thlf.com
clc@thlf.com
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of October, 2025, a true and correct copy of the foregoing **COMPLAINT** was electronically filed and served via USDC e-filing and/or e-mail, and addressed to the following:

*Original Signature is on File at*
*The Hustead Law Firm, A Professional*
*Corporation*

*s/ Patrick Q. Hustead*
Patrick Q. Hustead, Esq.